IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 24-1396-RGA ) |
| UMR, INC., | ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendant UMR, Inc. ("Defendant" or "UMR") to dismiss all counts of the Complaint. (D.I. 16). For the reasons set forth below, the Court recommends that UMR's motion be GRANTED.

**I.     BACKGROUND**

The No Surprises Act is a federal law designed to protect individuals from the cost of healthcare services rendered by unexpected out-of-network providers. *See* 42 U.S.C. § 300gg-111 *et seq.* In particular, where an individual patient unknowingly receives care from an out-of-network provider in certain emergency or non-emergency situations, the No Surprises Act prohibits that provider from billing the patient the difference between the in-network coverage amount and the provider's out-of-network charges.[1] *Id.* §§ 300gg-111(a) & 300gg-111(b). The patient is not required to pay the excess charges, and the provider must instead seek further payment from the patient's health insurance company. *Id.* §§ 300gg-111(a) & 300gg-111(b). Under the No Surprises Act, the out-of-network provider can dispute the amounts paid by the

---

[1]     This practice is referred to as "balance billing."

insurer through an independent dispute resolution ("IDR") process, whereby the parties submit their proposals for the proper payment amount to a neutral entity. *Id*. § 300gg-111(c). From the proposals, the neutral entity selects the amount that the out-of-network provider is to be paid. *Id*. § 300gg-111(c)(5). The IDR determination is final and binding, and payment of the amount therein must be made within thirty days. *Id*. §§ 300gg-111(c)(5)(E)(i)(I) & 300gg-111(c)(6). This case arises from UMR's alleged failure to pay certain amounts due under IDR determinations rendered under the No Surprises Act.

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC (collectively, "Plaintiffs" or "SpecialtyCare") are healthcare providers operating in the United States. (D.I. 1 ¶ 3). According to the Complaint, SpecialtyCare provided out-of-network services to UMR members or patients who receive their health insurance from self-funded plans under the Employee Retirement Income Security Act ("ERISA") for whom UMR provides administrative services (collectively, "UMR members or insureds"). (*Id.* ¶¶ 3, 13). SpecialtyCare billed UMR directly for the out-of-network healthcare services provided to UMR members and insureds, but UMR either failed to pay or paid less than the full billed amount. (*Id.* ¶¶ 13, 14 & 16; *see also* D.I. 1, Ex. A).

Pursuant to the No Surprises Act, the parties proceeded to negotiate payment. (D.I. 1 ¶ 16). After the parties failed to reach an agreement within the statutory negotiation period, SpecialtyCare initiated IDR proceedings. (*Id.*). According to the Complaint, SpecialtyCare obtained 300 IDR determinations in its favor, amounting to a combined $256,427 in unpaid fees. (D.I. 1, Ex. A). Despite the statutory mandate that the IDR determinations "shall be binding" and that payment "shall be made" to the healthcare provider within thirty days, UMR "consistently failed to make

2

timely payment." (D.I. 1 ¶ 23). SpecialtyCare "diligently followed-up with UMR through multiple avenues," but UMR has not paid the amounts due under the IDR decisions. (*Id.* ¶¶ 24-27).

On December 20, 2024, SpecialtyCare filed this case against UMR, asserting claims for confirmation of arbitration awards, non-payment of arbitration awards, improper denial of benefits, open account, bad faith and unjust enrichment. (D.I. 1). On August 29, 2025, UMR filed the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims for confirmation of arbitration award under the Federal Arbitration Act ("FAA") (Count I), non-payment of IDR determinations in violation of the No Surprises Act (Count II) and implied right of action under the No Surprises Act (Count III) should be dismissed because there is no private right of action under the statute. (D.I. 16 & 17). UMR also seeks dismissal of SpecialtyCare's ERISA claim (Count IV) and the state-law open account (Count V), bad faith (Count VI) and unjust enrichment (Count VII) claims. Briefing was complete on October 17, 2025. (D.I. 19 & 21).

## II.   LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

### III.   DISCUSSION

UMR seeks to dismiss the claims of confirmation of arbitration award under the FAA (Count I), non-payment of IDR determination in violation of the No Surprises Act (Count II) and the implied right of action under the No Surprises Act (Count III) on the basis that there is no private right of action under the statute. (D.I. 17 at 8-13; D.I. 21 at 1-5). UMR also seeks dismissal of the ERISA claim (Count IV) based on a lack of standing and dismissal of the state-law claims (Counts V, VI and VII) as preempted by the No Suprises Act and for failure to state a claim. (D.I. 17 at 13-18; D.I. 21 at 6-10). The Court begins with the claims under the FAA and No Surprises Act.

####   A.   Count I (Petition to Confirm Arbitration Awards Under Section 9 of FAA)

In Count I, SpecialtyCare seeks to invoke Section 9 of the FAA to confirm various IDR determinations made under the No Surprises Act. (D.I. 1 ¶¶ 33-37). UMR argues that Count I should be dismissed because the No Surprises Act does not permit federal courts to confirm IDR determinations under Section 9 of the FAA. (*See* D.I. 17 at 8-13; D.I. 21 at 1-5). Relying upon several district court decisions, SpecialtyCare insists that the No Surprises Act does, in fact, permit

federal courts to confirm IDR determinations under this section of the FAA. (D.I. 19 at 4-6 (citing *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025) and *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. CV 22-6614 (KM) (JBC), 2023 WL 5815821 (D.N.J. Sept. 8, 2023))). The Court agrees with UMR.

Two provisions of the FAA are relevant to judicial action on arbitral awards. First, Section 9 of the FAA "empowers courts to confirm or enforce arbitration awards." *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 276 (5th Cir. 2025); *see also* 9 U.S.C. § 9. Second, Section 10 of the FAA "allows a court to vacate an arbitral award" in limited instances, such as where the award was procured by corruption, fraud or undue means. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); 9 U.S.C. § 10; *see also* 9 U.S.C. § 11 (providing grounds to modify or correct arbitration awards). Neither side here seeks vacatur of the relevant IDR determinations under Section 10. Instead, SpecialtyCare seeks a court order enforcing the IDR determinations pursuant to Section 9, and the question is whether the No Suprises Act permits such relief under Section 9 of the FAA.

The No Surprises Act provides that IDR determinations "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." 42 U.S.C. § 300gg-111(c)(5)(E). In other words, the No Surprises Act expressly prohibits judicial review of IDR determinations except where vacatur is sought pursuant to Section 10 of the FAA. In the Court's view, Congress's decision to incorporate only Section 10 of the FAA into the No Surprises Act "indicates that Congress deliberately left out" Section 9. *See Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 470 (3d Cir. 1994). Addressing this precise issue last year, the Fifth Circuit noted the same thing – the inclusion of Section 10 but omission of Section 9 in the No Surprises Act was a meaningful difference intended to have consequence. *See Guardian Flight*,

5

140 F.4th at 276 ("Section 9 of the FAA empowers courts to confirm or enforce arbitration awards, but Congress chose not to incorporate § 9 into the NSA. It incorporated only parts of § 10. By contrast, in other statutes, Congress **has** incorporated § 9 to create a private right of action. *See* 5 U.S.C. § 580(c). So, Congress knew how to create a private right of action in the [No Surprises Act] – and has done so elsewhere – but declined to do so." (cleaned up)). The No Surprises Act does not contemplate enforcement of IDR determinations through Section 9 of the FAA.

The Court is unpersuaded by the authority cited by SpecialtyCare. (D.I. 19 at 4-6). As to *Guardian Flight v. Aetna Life Insurance* ("*Aetna*"), the District of Connecticut concluded that IDR determinations under the No Surprises Act could be enforced by the courts. 789 F. Supp. 3d 214, 225-29 (D. Conn. 2025). But the court did not find an enforcement mechanism through Section 9 of the FAA. *Id*. at 227 ("No judicial 'confirmation' is required for [IDR determinations] to become 'binding.' There is thus no reason for the [No Surprises Act] to reference § 9 of the FAA."). Instead, in reaching its conclusion, the *Aetna* court reasoned that, without judicial confirmation, "IDR determinations would be effectively unenforceable." *Id.* at 228. But that rationale ignores the enforcement mechanisms expressly provided by the No Surprises Act. *See, e.g.*, 42 U.S.C. § 300gg-22; *see also Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 2:25-CV-01087 (BRM) (JSA), 2025 WL 3063648, at *9-10 (D.N.J. Nov. 3, 2025); *see also Guardian Flight*, 140 F.4th at 277 (summarizing administrative remedies offered by No Surprises Act to enforce IDR determinations).[2] And as to *GPS*, SpecialtyCare ignores the actual basis for jurisdiction in that

---

[2] Acknowledging the "conflict" between its decision and the Fifth Circuit's, the District of Connecticut has recently noted that "[i]t is possible I would have reached a different conclusion" had 42 U.S.C. § 300gg-22 been briefed. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 3:24-cv-00680-MPS, D.I. 295 (D. Conn. Sept. 30, 2025). Notably, no federal court has followed the District of Connecticut in finding jurisdiction to enforce IDR determinations where no party seeks vacatur.

case. (D.I. 19 at 5 & 9-11). Although the *GPS* court did enforce the IDR determination, the court "only had jurisdiction to confirm the award because the [plaintiff] attempted to vacate" the IDR determination under Section 10 of the FAA, thereby permitting "judicial review" under the No Surprises Act. *Mod. Orthopaedics*, 2025 WL 3063648, at *13 (distinguishing *GPS*); *see also SpecialtyCare Inc. v. Meritain Health, Inc.*, C.A. No. 25-198-MN, 2026 WL 353259, at *4 (D. Del. Feb. 9, 2026) (same); *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n*, No. 25-CV-1255 (CS), 2025 WL 3496382, at *6 (S.D.N.Y. Dec. 5, 2025) (same); *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-CV-20428, 2025 WL 742761, at *3 n.2 (S.D. Fla. Mar. 9, 2025) (same); *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1083-084 (M.D. Fla. 2023) (same). Here, neither side seeks vacatur of the IDR determinations pursuant to Section 10 of the FAA and, as such, *GPS* is inapplicable.

Ultimately, the Court agrees with the many other district courts that have concluded IDR determinations under the No Surprises Act cannot be enforced pursuant to Section 9 of the FAA.[3] The Court therefore recommends that Count I be dismissed.

---

[3] *SpecialtyCare Inc. v. Aetna, Inc.*, No. 1:25-CV-224, 2025 WL 3719227, at *2-3 (M.D. Pa. Dec. 23, 2025); *N. Jersey Neurosurgical Assocs. PA. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-12593 (SDW) (MAH), 2025 U.S. Dist. LEXIS 261572, at *1-2 (D.N.J. Dec. 18, 2025); *Neuromon Pros. LLC v. Aetna Life Ins. Co.*, No. 25-1701 (SDW) (JSA), 2025 U.S. Dist. LEXIS 261584 (D.N.J. Dec. 18, 2025); *Savalia v. Blue Shield of Cal. Life & Health Ins. Co.*, No. 8:25-cv-02031, 2025 U.S. Dist. LEXIS 261150, at *16 (C.D. Cal. Dec. 16, 2025); *Mitchell F. Reiter MD PC v. Horizon Blue Cross Blue Shield of New Jersey*, No. 2:25-CV-12526 (WJM), 2025 WL 3514300, at *3-5 (D.N.J. Dec. 8, 2025); *T.V. Seshan*, 2025 WL 3496382, at *4-7; *Spiel, MD, PA v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-14769 (SRC), 2025 WL 3459719, at *4-6 (D.N.J. Dec. 2, 2025); *Tamagnini v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-02022 (SRC), 2025 WL 3459708, at *4-6 (D.N.J. Dec. 2, 2025); *Complete Med. Wellness LLC v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-04177 (SRC), 2025 WL 3443620, at *4-6 (D.N.J. Dec. 1, 2025); *Garden State Pain Mgmt. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-05679 (SRC), 2025 WL 3443243, at *4-6 (D.N.J. Dec. 1, 2025); *Ne. Neurosurgical Assocs. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-06288 (SRC), 2025 WL 3282210, at *4-6 (D.N.J. Nov. 25, 2025); *Freeman Pain Inst. P.A.*

**B.     Count II (Action for Non-Payment Under the No Surprises Act) and Count III (Implied Right of Action Under the No Surprises Act)**

Counts II and III seek payment of amounts due under the IDR determinations and are premised solely on violations of the No Surprises Act. (D.I. 1 ¶¶ 38-47). UMR argues that Counts II and III must be dismissed because the statute creates neither an express nor implied private right of action. (D.I. 17 at 8-13; D.I. 21 at 1-5). The Court agrees.

As an initial matter, there is no express private right of action to confirm IDR determinations under the No Surprises Act. *See Guardian Flight*, 140 F.4th at 275 ("[T]he NSA contains no express right of action to enforce or confirm an IDR award."). SpecialtyCare does not contend otherwise. (D.I. 19 at 6-14). Instead, SpecialtyCare appears to argue that the No Surprises Act creates an implied private right of action based on its provision that IDR determinations "shall be binding upon the parties involved." (*Id.* at 6-8 (quoting 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) and relying upon *Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020))).

In determining whether a private right of action exists under a federal statute, courts in the Third Circuit evaluate "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff." *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) and *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004)). A plaintiff must demonstrate both elements are satisfied for a court to conclude that a federal statute creates an implied private right of action. *McGovern*, 554 F.3d at 116.

---

v. *Horizon Blue Cross Blue Shield of New Jersey*, No. CV 25-02507 (SRC), 2025 WL 3268289, at *4-6 (D.N.J. Nov. 24, 2025); *PHI Health, LLC v. Keating Auto Grp. Emp. Ben. Plan Tr.*, No. 4:24-cv-2832, 2025 WL 3618198, at *3-4 (S.D. Tex. Nov. 4, 2025), *report and recommendation adopted sub nom. PHI Health, LLC v. Entrust, LLC*, No. CV H-24-2832, 2025 WL 3617339 (S.D. Tex. Dec. 11, 2025); *Mod. Orthopaedics*, 2025 WL 3063648, at *5-7; *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, 790 F. Supp. 3d 129, 136-38 (E.D.N.Y. 2025).

As to the first prong, the Court concludes that the "shall be binding" and "shall be made" language of the No Surprises Act creates a personal right for SpecialtyCare. *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9 ("There is no plausible argument that Congress intended to allow insurers like [defendant] to simply ignore the 'binding' outcomes of the IDR. [Plaintiff] has a right to be paid. The question is whether the Court may properly enforce this right." (citation omitted)).

As to the second prong, however, the "robust system of administrative enforcement" provided by the No Surprises Act creates a "strong presumption" that Congress did not intend to create a personal remedy for SpecialtyCare. *See id.* at *9; *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007). Indeed, Congress empowered the Department of Health and Human Services ("HHS") – not the courts – to "assess penalties against insurers for failure to comply" with the statute. *Guardian Flight*, 140 F.4th at 277 (discussing 42 U.S.C. § 300gg-22(b)(2)(A)); *see also Mod. Orthopaedics*, 2025 WL 3063648, at *9-10 ("[T]he primary enforcement authority for the [No Surprises Act] lies with **state** administrative agencies. . . . However, in the event a State is unable, or unwilling, to enforce compliance with any part of the [No Surprises Act], the HHS may assume primary responsibility for enforcing the [No Surprises Act]."). That the No Surprises Act provides for state and HHS enforcement – while expressly prohibiting judicial review beyond petitions to vacate IDR determinations – demonstrates that SpecialtyCare has no personal remedy under the statute. *See Guardian Flight*, 140 F.4th at 276 ("We will not find an implied right of action where Congress expressly forecloses it.").

Although the Third Circuit has not ruled on this particular issue, the Fifth Circuit has in the recent *Guardian Flight* decision. There, the plaintiff healthcare providers sued the defendant insurer for failure to timely pay IDR determination awards pursuant to the No Surprises Act,

9

similarly asserting claims under the statute (and ERISA).  *See Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 748 (N.D. Tex. 2024).  The district court dismissed all of plaintiffs' claims.  *Id.* at 755.  On appeal, the Fifth Circuit affirmed the dismissal, finding that the No Surprises Act does not provide an express or implied private right of action to confirm IDR determinations.  *Guardian Flight*, 140 F.4th at 274-77.[4]  This Court ultimately finds persuasive and agrees with the Fifth Circuit and the vast majority of district courts that the No Surprises Act does not permit judicial enforcement of IDR determinations.[5]

The Court is not persuaded by the cases SpecialtyCare relies on.  (D.I. 19 at 8-11).  As discussed above in Section III.A, *GPS* involved a (permissible) petition to vacate an IDR determination under Section 10 of the FAA, whereas *Aetna* ignored the available non-judicial enforcement mechanisms under the No Surprises Act.  Although *Aetna* found that judicial enforcement of IDR determinations was permitted by the No Surprises Act, *Aetna* apparently "stands alone."  *Meritain Health*, 2026 WL 353259, at *4; *see also Guardian Flight*, 140 F.4th at 276 n.5 (Fifth Circuit disagreeing with *Aetna* based on the "plain text and structure" of the No Surprises Act).  In *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), the

---

[4] The Supreme Court recently denied certiorari.  *See* No. 25-441, 2026 WL 79855 (U.S. Jan. 12, 2026).

[5] *See Guardian Flight*, 140 F.4th at 274-77; *Meritain Health*, 2026 WL 353259, at *3-4; *SpecialtyCare*, 2025 WL 3719227, at *2-3; *N. Jersey Neurosurgical Assocs.*, 2025 U.S. Dist. LEXIS 261572, at *1-2; *Neuromon*, 2025 U.S. Dist. LEXIS 261584; *Savalia*, 2025 U.S. Dist. LEXIS 261150, at *16; *Worldwide Aircraft Servs. Inc. v. Freedom Life Ins. Co. of Am.*, No. 8:25-cv-01158-WFJ-AEP, 2025 WL 3551397, at *2-3 (M.D. Fla. Dec. 11, 2025); *Reiter*, 2025 WL 3514300, at *3-5; *T.V. Seshan*, 2025 WL 3496382, at *7-9; *Spiel*, 2025 WL 3459719, at *6-8; *Tamagnini*, 2025 WL 3459708, at *6-7; *Complete Med. Wellness*, 2025 WL 3443620, at *6-8; *Garden State Pain Mgmt.*, 2025 WL 3443243, at *6-8; *Worldwide Aircraft*, 2025 WL 3312169, at *1-2; *Ne. Neurosurgical Assocs.*, 2025 WL 3282210, at *6-8; *Freeman*, 2025 WL 3268289, at *6-8; *PHI Health*, 2025 WL 3618198, at *2-3; *Mod. Orthopaedics*, 2025 WL 3063648, at *7-14; *Farkas*, 790 F. Supp. 3d at 136-38.

statute at issue (Risk Corridors program of the Affordable Care Act) did not provide a similar enforcement mechanism for a plaintiff or include the same prohibition of judicial review as the No Surprises Act. *Id.* at 309-11. And in *Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68 (D.D.C. 2002), the court applied (without analyzing) already existing arbitration law to find arbitration awards under the Federal Insecticide Fungicide and Rodenticide Act judicially enforceable. *See id.* at 73-77; *see also Worldwide Aircraft Servs., Inc. v. United Healthcare*, No. 8:24-CV-2527-TPB-LSG, 2025 WL 3312169, at *2 (M.D. Fla. Nov. 28, 2025) (distinguishing *Cheminova*); *Med-Trans Corp.*, 700 F. Supp. 3d at 1084 (same). These cases are either not on point or contrary to the many others that have found no private right of action exists under the No Suprises Act.

The overwhelming weight of authority to address this issue has concluded that out-of-network providers cannot turn to the courts to enforce IDR determinations rendered under the No Surprises Act. Even if SpecialtyCare would prefer a different mechanism, "the wisdom of Congress's policy choice is beyond our judicial ken." *Guardian Flight*, 140 F.4th at 277. Because the No Surprises Act does not create an express or implied private right of action to enforce IDR determinations, the Court recommends that Counts II and III be dismissed.

  **C.**  **Count IV (Improper Denial of Benefits Under ERISA)**

In Count IV, SpecialtyCare alleges that it has been assigned the right to benefits (and payments) by UMR's members and insureds and, as such, the amounts due under the IDR determinations are owed to SpecialtyCare as an ERISA beneficiary. (D.I. 1 ¶¶ 48-56). UMR argues that SpecialtyCare's ERISA claim should be dismissed for lack of Article III standing because the plan beneficiaries who assigned their claims to SpecialtyCare (*id.* ¶ 14) did not suffer any concrete injury. (D.I. 17 at 13-15; D.I. 21 at 6-7). Relying on *Aetna*, SpecialtyCare argues that untimely payment of IDR determinations constitutes a legally cognizable "concrete injury."

11

(D.I. 19 at 14-16 (quoting *Aetna*, 789 F. Supp. 3d at 231-32)).  The Court ultimately agrees with UMR that SpecialtyCare lacks standing to sue under ERISA for failure to pay the amounts due under the IDR determinations.

Healthcare providers "may obtain standing to sue" under ERISA "by assignment from a plan participant."  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).  But the plan participants must have suffered a concrete injury for the provider to have standing as assignee.  *See Guardian Flight*, 140 F.4th at 278; *see also Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor."); *CardioNet*, 751 F.3d at 178 ("It is a basic principle of assignment law that an assignee's rights derive from the assignor.").  By design, the No Surprises Act shields plan participants from the out-of-network costs that are the subject of this lawsuit; in other words, the outcome of this dispute will not affect the plan participants in any way.  *See Mod. Orthopaedics*, 2025 WL 3063648, at *8-9 ("The [No Surprises Act] protects patients by relieving them of liability to pay for the procedure beyond their ordinary in-network insurance payments and instead has the provider and the insurer negotiate or dispute the proper payment among themselves.").  The plan participants have no real interest in the outcome of this case.

Because the plan participants lack a "concrete stake in this lawsuit," even as a purported assignee, SpecialtyCare similarly lacks the Article III standing necessary to bring an ERISA claim. *See Guardian Flight*, 140 F.4th at 278 ("[B]ecause the beneficiaries would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees."); *see also Thole v. U. S. Bank N.A*, 590 U.S. 538, 541 (2020) ("If Thole and Smith were to *lose* this lawsuit, they would still receive the exact same monthly benefits that

they are already slated to receive, not a penny less. If Thole and Smith were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. . . . Because the plaintiffs themselves have no concrete stake in the lawsuit, they lack Article III standing."). None of the cases cited by SpecialtyCare compel a different result. (*See* D.I. 19 at 14-16). Even if SpecialtyCare had plausibly alleged that it received assignment of member benefits, such an assignment would not confer Article III standing to sue an insurer for failure to pay amounts due under the IDR determinations. *See Guardian Flight*, 140 F.4th at 278. The Court therefore recommends that the ERISA claim (Count IV) be dismissed.

      **D.**      **Count V (Open Account), Count VI (Bad Faith) and Count VII (Unjust Enrichment)**

In Counts V, VI and VII, SpecialtyCare asserts several causes of action arising under Delaware law. (D.I. 1 ¶¶ 57-77). Because SpecialtyCare and UMR are both Delaware corporations (*id.* ¶¶ 8-9), jurisdiction over the state law claims cannot be based on diversity jurisdiction. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."); *see also* 28 U.S.C. §§ 1332(a)(1) & 1332(c)(1). Recognizing this, SpecialtyCare alleges that this Court has jurisdiction over the state law claims based on supplemental jurisdiction under 28 U.S.C. § 1367(a). (D.I. 1 ¶ 10).

Supplemental jurisdiction permits federal courts to adjudicate claims that would otherwise lack federal subject matter jurisdiction. Specifically, a district court having original jurisdiction in a civil action may exercise such supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over claims for several reasons, including where "the district court has

dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).

As set forth above, the Court recommends dismissal of all of SpecialtyCare's federal claims. In such a situation, the exercise of supplemental jurisdiction is not automatic; instead, the Court has discretion to decide whether to exercise such jurisdiction over the state law claims. SpecialtyCare has not raised – and the Court has not identified – any considerations of judicial economy, convenience or fairness to the parties that would justify such exercise. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). This case is in its infancy; without the federal claims, the state law claims should be dismissed. *See Humana, Inc. v. St. Jude Med., LLC*, C.A. No. 20-1032-SB, 2020 WL 7264161, at *4 (D. Del. Oct. 12, 2020) (Bibas, J., sitting by designation) (after dismissing federal claims, declining to exercise supplemental jurisdiction "[b]ecause this case has just begun [and] there is no good reason to keep the state claims in federal court"). The Court thus recommends that Counts V-VII be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that UMR's motion to dismiss (D.I. 16) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2).

Any responses to the objections shall be limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: February 20, 2026

_____
UNITED STATES MAGISTRATE JUDGE